## Benner *against* Phillips.

An action against the executor or administrator of a decedent, without making the heirs or devisees parties to it, does not release the real estate from the lien of the debt; but they may be brought in afterwards by a writ of *scire facias* upon the judgment when obtained; but in such case the heir or devisee may make any defence which he could have made to the original action.

The 24th section of the Act of the 24th February 1834, which limits the lien of the debts of a decedent upon his real estate to five years, is not applicable to the estates of those who died previously to the time when that Act took effect, which was the 1st October 1834.

Under the provisions of the Act of 24th February 1834, if suit be brought against the executor or administrator within five years after the death of the decedent, and a *scire facias* to bring in the heirs be issued within five years from the rendition of the judgment in the original suit, the lien of the debt upon the real estate will be preserved.

Upon a *scire facias* against the administrator *de bonis non* with the will annexed of a decedent, with notice to the devisees of the land to appear and show cause why the plaintiff should not have execution against the land devised to them, it is competent for such devisees to prove that, by an order of the Orphans' Court, the lands of the testator were sold by the administrator to an amount sufficient to pay all his debts; and if this be established, although the plaintiff may be entitled to judgment *quod recuperet* against the administrator, he cannot recover against the devisees of the land. It is the duty of the creditor in such case to look to the appropriation of the proceeds of the sale of a decedent's land made by an order of the Orphans' Court.

ERROR to the Common Pleas of *Centre* county.

William Alexander, for the use of the executor of Henry Phillips, against James Gelleland, administrator *de bonis non cum testa-*

[Benner *v.* Phillips.]

*mento annexo* of Philip Benner deceased, with notice to all the heirs and devisees of the said testator.

Philip Benner owned a very large estate, which by his will he bequeathed and devised to his children and grandchildren, and died on the 18th July 1832, owing a large amount of debts. On the 18th March 1836, James Gelleland, administrator *de bonis non* with the will annexed, presented a petition to the Orphans' Court, setting forth a list of debts amounting to $23,460.24, and praying the Court to order a sale of part of the real estate of the testator for their payment. This order was granted. In pursuance thereof, from 1836 to 1839, the administrator sold lands to the amount of $24,947.03. It appeared on the trial that there were other debts of the testator than those set out in the petition to the Orphans' Court, amounting to about $6000. It also appeared that there was a large personal estate. On the 1st March 1839 a suit was brought by William Alexander for the use of the executor of Henry Phillips, the present plaintiff, against James Gelleland, administrator *de bonis non* with the will annexed of Philip Benner, in which a judgment was rendered for the plaintiff for $3902.70, on the 24th November 1840. On the 2d March 1842 a *scire facias* issued upon this judgment against the administrator of Philip Benner deceased, and Josiah M. Benner and others, heirs and devisees of the said Philip Benner. To this the said heirs and devisees appeared and made defence upon the following grounds:

1. That as the heirs and devisees were not made parties to the original action, their lands were thereby released from the lien of the debt sought to be recovered.

2. That their lands were released by the lapse of time from the death of the testator to the suing out of the writ in the original action, and especially to the suing out of the writ of *scire facias* to which they were first made parties.

3. That by the proceedings in the Orphans' Court by which other lands of the testator had been sold for the payment of debts, their lands were discharged.

The court ruled all these points against the defendants, and directed a verdict and judgment for plaintiff.

*J. T. Hale* and *Burnside*, for plaintiffs in error, argued that this case would be governed by the Act of 1834; and referred to the 24th and 70th sections to show that the liens of debts were limited to five years. The sale by the administrator, by order of the Orphans' Court, was a judicial sale; and all the creditors of the estate, for whose especial benefit and at whose instance such sales are always made, must look to the appropriation of the money. The instruction of the court was, that although money enough was raised to pay the debts, yet if it were not applied, the loss must fall upon the devisees. This cannot be so: the money was raised to pay debts; the administrator gave security for the benefit

[Benner *v.* Phillips.]

of the creditors that he would rightly appropriate the money, and the devisees can have no control over the subject. All judicial sales for the payment of debts will devest the lien of those debts. 1 *Rawle* 302; 1 *Penn. Rep.* 240; 8 *Serg. & R.* 150; 8 *Watts* 253.

*Miles* and *Blanchard*, contra, contended that the case must be governed by the provisions of the Act of 1797; that in passing the Act of 1834 the legislature did not intend to give it a retrospective operation, which is manifest from that part of the Act which provides that it shall take effect from and after the 1st October 1834. It would work manifest injustice to give this Act any other construction. 5 *Watts* 158; 5 *Watts & Serg.* 397; 2 *Whart.* 396; 8 *Watts* 257; 12 *Serg. & R.* 340; 2 *Johns.* 505; 10 *Serg. & R.* 101. Upon the death of the testator, his debts were a lien upon all his estate, real and personal; and nothing but a payment of those debts will discharge that lien. It was not pretended that the plaintiff's debt had not been a lien. It has been determined, as is said, in a case not yet reported, that our suit and *scire facias* are well brought. It is not pretended that the debt has been paid, and all we ask now is that the judgment may be revived, that the debt may some time or other be paid. The sale by the administrator was for the payment of other debts; this debt was not even mentioned in the petition to the Orphans' Court, and the sales were not more than sufficient to pay those set out: at all events, such sale will not deprive us of the right to have the judgment revived. 8 *Watts* 504; 9 *Watts* 526; 6 *Binn.* 395; 2 *Rawle* 419.

The opinion of the Court was delivered by

Rogers, J.—The 18th July 1832, General Philip Benner died, leaving a large real and personal estate, but greatly indebted, and among others to a certain William Alexander. To the April Term 1839, William Alexander, for the use of Edward Kinsey, executor of Henry Phillips, brought suit against James Gelleland, administrator of Philip Benner, and on the 1st February 1840, obtained judgment for want of a plea. At the April Term following the judgment was opened, so far as to let the defendant into a defence on the merits. The 24th November 1840, a verdict was given for $3902.70, on which judgment was rendered, which, on the 29th May 1841, was affirmed by the Supreme Court. On the 2d March 1842, a *scire facias* to April Term 1842 was issued against the administrator and the heirs and devisees. The plaintiff, after giving evidence of the above facts, rested; whereupon the defendants gave in evidence the will of Philip Benner, and that the testator died the 18th July 1832. A petition dated the 18th May 1836, of James Gelleland, administrator *de bonis non*, to the Orphans' Court of Centre county, praying an order of sale of real estate of General Benner, not specifically devised, for payment of debts. To this petition was attached a schedule of debts,

[Benner *v.* Phillips.]

amounting to $23,460.24. On the 18th May 1836, the court decreed that $25,000 be raised, and for this purpose ordered that the land described in the petition be sold. The administrator sold the property in pursuance of this decree, as appears by a return to the court, confirmed by them, to the amount of $24,947.03. The defendants further gave in evidence suits by the administrator against Henry Benner, Thomas R. Benner, and Philip Benner Jun., administrator of Thomas R. Benner, heirs and devisees of Philip, amounting to $5576.08, with proof that the said Henry Benner and Thomas R. Benner had property sufficient to satisfy and pay the amount of the respective judgments against them. The amount of assets which came into the hands of the administrator, or which might have come into his hands, amounts to $30,523.11. The plaintiff in reply gave evidence of two judgments against the administrator, one, the 8th May 1840, in favour of the Bank of Northumberland for $5595.60; the other, Jacob Lex against the same, judgment 25th November 1840, for $887.

On the trial three points of defence were taken:

1. That by suing the administrator, without making the heirs parties, the plaintiff released the real estate of the testator in the hands of the devisees and heirs.

2. As to the extent and duration of the lien on the real estate.

3. That by the sale of the real estate, under the order of the Orphans' Court, an amount was raised more than sufficient to pay the debts, and that consequently the creditors must look to the administrator, and not the heirs, for payment.

It has been ruled in *Murphy's Appeal*, (8 *Watts & Serg.* 165), that suing the administrator alone, without joining the heirs, does not release the real estate of the decedent from the liens and debts against it; that notwithstanding, the *scire facias* is well brought against the heirs and devisees, they having the same defence as if originally brought against them, even permitting them to go behind the judgment, and make a defence which it would be competent for them to make if parties to the original suit. This disposes of the first point.

Next, as to the extent and duration of the lien on the real estate. The testator died the 18th July 1832. Suit was brought against the administrator to April Term 1839, so that more than five and not seven years had expired from his death. Whether, therefore, the original suit was in time to preserve the lien, depends upon whether the case is governed by the Act of Assembly of 1797, which allows seven years, or the Act of 1834, which reduces the time to five years. The Act of 1834 was passed the 24th February. The 70th section provides that "This Act shall take effect from and after the first day of October next after its passage; and all such Acts of Assembly as are hereby altered or supplied, shall be and are hereby repealed, except so far as may be neces-

[Benner *v.* Phillips.]

sary to finish proceedings commenced, or to settle the estates of persons who may have died before that time." It is insisted that this Act applies as well to persons who died before as after the 1st day of October 1834. This is a point not without difficulty; but as there is some ambiguity in the Act, and the intention is by no means clear, we think it best to give this section a prospective, rather than a retrospective operation. At the time of the death of Benner, the creditors had seven years to prosecute their suits and preserve the lien against the real estate; and to deprive them of it, by reducing it to five, ought not to be done without some plain, unequivocal intent, clearly expressed, to that effect. Now, this intent cannot be gathered from the 24th section; and the language of the 70th section would seem to be rather adverse to such a construction; for by that section the Act is not to take effect until after the 1st day of October 1834; but if it is made to embrace this case, it takes effect on the creditors before that period. This interpretation would take creditors by surprise, who would naturally suppose, applying the common rules of construction, that they had seven years—the Act of 1834 notwithstanding—to prosecute their claims, when the debtor died before the Act of 1834 went into operation. Our unlimited respect for the legislature forbids us giving such a construction to this Act as would impair vested rights. Such is not their intention, whatever aspect it may assume in a literal or narrow interpretation.

Another question, however, arises. The *scire facias* against the heirs and terre-tenants was brought the 2d March 1842, to the April Term 1842, more than nine years after the death of the testator. Is there any limitation to the time when suit shall be brought against the heirs and devisees? The 24th section of the Act of 1834 enacts that " no debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators, within the period of five years after his decease; or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said period of five years, shall be filed within the said period of five years, in the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of five years after said bond, covenant, debt or demand becomes due." Unless by analogy we put some limit to the time, the lien against heirs, where suit is brought against the administrator, may be indefinite; for, where the creditor commences suit and obtains judgment against the personal representatives every five years, as he may, he might, at any distance of time, issue a *scire facias,* and call upon the heirs to show cause why the debt should not be levied off their land. But this would be contrary to the whole course of

VOL. IX.—3　　　　B *

[Benner *v.* Phillips.]

legislation, and of the judicial decisions which treat devisees and heirs in some measure as purchasers, freeing their lands from the lien of debts, unless duly prosecuted in a certain limited period. If, then, the lien is not indefinite, what is the limitation, and what is the method to be pursued by the creditor to preserve the lien? As has been already decided, commencing suit against the administrator, without naming the heirs and obtaining judgment, does not release the lien. It is competent for the creditor, notwithstanding, afterwards to proceed against the heirs; and when this is done within five years from the rendition of the judgment against the administrator, we think, in analogy to the 24th section of the Act of 1834, the lien remains. This will furnish an intelligible rule, equally just to the creditor as the heirs. The judgment is record evidence of the claim. It shows the amount due or claimed to be due, and is as much a notice to the heirs as the copy or statement of the bond, &c. not due. We think it unreasonable that the lien should be suffered to remain longer, as that would continue the mischief which the legislature and the courts have taken such pains to remedy. As, then, the *scire facias* against the heirs was brought within five years from the judgment against the administrator, we are of opinion there is nothing in the second objection.

The third point remains to be considered. In relation to this part of the case the court say, " The next question is raised out of the evidence given by the defendants. They have shown that in 1836 the administrator, Mr Gelleland, exhibited to the Orphans' Court an inventory of debts against the estate, amounting to $23,460.24, which sum, however, did not include this debt now in suit, nor some others which have been mentioned; that he obtained an order of that court for the sale of certain portions of Benner's real estate; and at various times from 1836 to 1839, sold different parcels for about $25,000; that he obtained judgments against several of the heirs, to the amount of $4620.56, which were and are collectable; and it is argued that from these sources, &c., the administrator has had or might have had funds enough to pay this debt, and all others against the estate, and that the creditor is bound to look to him and his sureties for satisfaction of this debt, and has no right to pass by him, with so much money in his hands, and come upon the real estate of the heirs for his satisfaction. Mr Gelleland has not been called on to settle his administration account, and he has settled none; and we have not the means of ascertaining the precise amount of indebtedness of the estate he has in charge, nor have we any evidence of the receipts by him of the proceeds of the sales he made, or of the amount of the judgments he obtained. Under such circumstances the plaintiff asks for a revival of his judgment and a continuance of his lien. The counsel for the defendants agree that the judgment may be revived against the administrator, which is an admission

[Benner *v.* Phillips.]

that the debt is still existing against the estate; but they insist, on behalf of the heirs and legal representatives, that the revival ought not to affect the real estate.   But suppose (and from all we have seen, the case is very probable) that on the application by the administrator of all the assets in his hands to the debts of the estate, a balance of the debt should remain unpaid?   The plaintiff will then be condemned to fall back on his lien on the real estate; and to preserve that lien for the purpose of such an emergency, is the object of this proceeding.   We have seen that thus far his lien has been preserved, and that it will continue until next July; but why should he then lose it?   If the administrator has funds which he ought to apply to it, the heirs can compel the application as well as the plaintiff; and since the debt has not been actually paid, the plaintiff has a right to insist that his lien should be preserved, for the security of whatever balance may be due to him, after the administrator shall be compelled to make distribution of the assets in his hands.   He will not be permitted to enforce the lien by a sale of the real estate of the heirs, until distribution of the money in the administrator's hands shall be made.   For this purpose our powers over our process are ample. We can and we will restrain the plaintiff from seizing and selling the land bound by his judgment, until the necessity of permitting him to do so is made apparent by a settlement of the administration account; but, meanwhile, we will not deny him the security afforded by a continuance of his lien.   The estate is a large one, and its indebtedness was large; and to refuse to continue the plaintiff's lien until the estate can be settled in a manner advantageous to all parties, especially the defendants, in the regular course of administration, would be to punish the plaintiff for the forbearance and indulgence he has shown.   There is no merit in this ground of defence.   The heirs do not question the debt, nor show that it has been paid.   Hitherto the plaintiff has done all the law required him to do to preserve his lien; and now, when the legal limit of indulgence is being approached, and he asks for a renewal and continuance of his lien, the defendants object, on the ground that he did not rush upon the estate, which was in process of administration, and compel payment of himself, when, most probably, it would have torn from them the inheritance which they have.

Whether the allegation of the defendants that there is an amount in the hands of the administrator arising from the sale of the real estate is true, is not the question.   It is sufficient that it was alleged on one part and denied on the other.   Assuming the fact to be as stated, the court decided that taking the whole case and every fact which they have established, it does not afford a reason why the plaintiff should be estopped from obtaining a judgment against them which shall continue the lien which he now has on their land.   It might present a case for denying the plaintiff pro-

[Benner v. Phillips.]

cess on his judgment to seize and sell their land, but this is the utmost of it.

It must be remarked that this is a *scire facias* to the heirs and devisees to show cause why the lien should not continue, and why the plaintiff should not have execution on the land devised to them by the testator.   In this suit, as has been already seen in *Murphy's Appeal*, it is open to show that the judgment has been paid, and even to go behind the judgment for that purpose.   If they can satisfy the court that it has been wholly paid, they are entitled to a verdict; if in part only, then the plaintiff is only entitled to a judgment to be levied on their lands for what remains due.   And whether it be an actual or judicial payment matters not, as it may be that the judgment remains good as to the administrator, and yet that it is paid and satisfied so far as respects the heirs. In other words, the creditor may be entitled to judgment against the personal representatives without having any right to resort to the land.   And when is the proper time to try these questions? Doubtless on the *scire facias;* for if a judgment once passes against the heirs, they are concluded, for they cannot afterwards, as the learned judge erroneously supposes, ask the equitable interposition of the court by denying process on his judgment to reach their land. Taking it, therefore, to be true, that there is money in the hands of the administrator arising from the sale of the real estate, sufficient to pay all the debts of the testator, or to pay all the other debts, and this in part, is this a defence to the *scire facias* as against the devisees?   The case involves this question, whether if there be a loss by the default of the administrator, that loss is to be borne by devisees or the creditors, and who is to look to the application of the purchase money, the devisees or the creditors? It is obvious that if we adopt the decision of the Court of Common Pleas, the land of the devisees may be taken twice for the payment of the same debts.   Thus, in this case, the land of the devisees has been taken already to the amount of upwards of $25,000 for payment of debts; and if this be squandered, the remaining estate will be swept from them for payment of the same debts.   I am not aware that the question has been directly ruled, although some cases which have a bearing on it have been decided, and all the analogous cases are adverse to the grounds assumed by the Court of Common Pleas.   Lands in Pennsylvania are chattels for payment of debts, and may be reached through the medium of our common law courts, by seizure, condemnation and sale, by virtue of a *venditioni*.   And when this mode is pursued, and the money goes into the hands of the sheriff, it is a payment of the amount raised by the sale, and operates forthwith as a discharge of the heirs and devisees to the amount for which it sold, and that whether it ever reached the pockets of the creditor or not.   He must look to the application of the purchase money ; his resort is to the sheriff where there is a misapplication of the fund.   With

[Benner v. Phillips.]

this, as is acknowledged, the heirs and devisees have nothing to do. Does this principle apply to the case of a sale by an administrator under an order of the Orphans' Court? We think that it does. The administrator is a judicial officer, acting under the authority of the court. On the application of the administrator, setting forth that the personal estate is insufficient for the payment of debts, the court may and ought to appoint suitable persons to investigate the facts of the case, and report upon the expediency of granting the application, and the amount to be raised by sale or mortgage, whereupon the court make their decree. The Act of the 29th March prescribes the manner of sale, and directs that the executor or administrator shall in all cases make return of his proceedings in relation to the sale or mortgage to the court, when, if approved by the court, it shall be confirmed. It is usual, when the court makes the order, to exact adequate security for the faithful performance of the trust; and this enures to the benefit of all who have an interest in the application of the fund, to wit: to the creditors of the deceased, and to his heirs and devisees. The creditors have an interest to the amount of their debts; the heirs and devisees to any surplus which may remain after these purposes are answered. In *Finney* v. *The Commonwealth*, (1 *P. R.* 240), it is laid down, that everything which a due attention to their interest would entitle the creditors to receive, they are considered as paid by operation of law as regards the debtor. When the money has been raised by a sale under the order of the court, two remedies (and they are very effectual ones) are open to the creditors. They may bring suit on the bond against the administrator, or on a proper application the Orphans' Court will compel the money to be brought into court for distribution. It is difficult to suggest any good reason why this duty should be devolved on the heirs, or why, in case it is not pursued, the loss should be thrown on them. It is very certain the court would defer a second application for a sale of the land, until some account was given, or the disposition was made of the proceeds of the first sale ordered by the court for that purpose. Thus, in *Pry's Appeal*, (8 *Watts* 253), it is ruled, that if the assets which come into the hands of the administrator be sufficient for the payment of all the debts of the intestate, the Orphans' Court will not at any future time grant an order for the sale of the real estate. And in the same case it is decided that the Orphans' Court will not grant an order for the sale of real estate for the payment of debts of the intestate which have lost their lien by lapse of time. If, therefore, an application had been made to the court for another order to sell, it would be refused; but the present suit is an attempt to do that through the medium of common law form, which would not be allowed by the court to whom this subject is more particularly committed.

Judgment reversed, and a *venire de novo* awarded.