## Shearer *et al.* *versus* Brinley *et al.*

1. A judgment was recovered against the executors of a decedent in 1827, a fi. fa. issued, land levied on and condemned in 1828 ; a venditioni issued in 1838. *Held*, that it was not necessary, under the Act of February 24th 1834, sect. 34, to make the widow and devisees parties previously to issuing the venditioni.

2. Had there been a judgment only against the executors, an execution could not have issued after the Act of 1834 was in force, without making the devisees, &c., parties.

3. The fi. fa., levy and condemnation created a lien on the land, and it was in the custody of the law to answer the debt.

4. The lien acquired by the levy and condemnation subsisted unaffected by the lapse of time, and the sheriff's sale under the venditioni divested the title of the devisees of the decedent.

5. The levy and condemnation being at a time when the lien of the debt was in force was a sufficient prosecution of the action : and under the Act of April 4th 1798, sect. 4, no revival of the judgment within five years was necessary.

6. The lien of a judgment against a decedent at the time of his death is without limit as against his heirs or devisees, and need not be revived in order to be executed on the land held by them.

7. McLaughlin *v.* McCumber, 12 Casey 14 ; Payne *v.* Craft, 7 W. & S. 465 ; Steel *v.* Henry, 9 Watts 528, remarked on.

May 25th 1874.　Before SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1874, No. 74.

This was an action of ejectment, commenced September 1869, by Abraham Brinley and Ann Jane Brinley his wife, in her right, and John Wilson, against William Shearer and Elias Shearer, for a tract of land in Fannet township.

The land originally belonged to Samuel Moore, who, by his will dated January 21st 1825, and proved April 1st 1825, devised it as follows :—

"I leave and bequeath to my daughter Nancy Wilson (otherwise Moore), wife to William Wilson, part of the place I now live upon after the death of her mother Catharine Moore, otherwise Patterson * * * supposed to be thirty-five acres of land, be the same more or less, and no debt or debts that her said husband William Wilson, have contracted or may contract shall be any lien or embarrassment, upon said described thirty-five acres of land, be the same more or less, but to be entirely for the support of my daughter Nancy Wilson (otherwise Moore) and her children or issue, and at the death of my said daughter, my grandchildren, if of age, they may sell the said thirty-five acres of land, be the same more or less; that is, the children or issue of my daughter Nancy Wilson (otherwise Moore)."

To April Term 1827, of the Court of Common Pleas of Frank-

[Shearer *v.* Brinley.]

lin county, Thomas H. Crawford recovered a judgment for $190.08 against Catharine Moore, William Wilson and Thomas Redman, executors, &c., of Samuel Moore, deceased.   A fi. fa. on this judgment was issued April 26th 1828.   On the 17th of May 1828, an inquisition was held and the land was condemned.   On the 14th of April 1838, a venditioni issued.   On the 10th of August, the land was sold by the sheriff to Jacob Shearer, and the deed acknowledged October 2d, 1838.   There had been no scire facias issued on the judgment to bring in the widow and heirs of the decedent.   Nancy Wilson, the daughter of the testator, died on the 11th of May 1854.   Mrs. Brinley and Wilson are her only children.

The cause was tried November 7th 1873, before Rowe, J., when the foregoing facts appeared in evidence.   There was evidence also by the defendants for the purpose of raising an equitable estoppel against the plaintiffs.   The only question discussed and decided by the Supreme Court was as to the validity of the sheriff's sale.

The plaintiffs' fourth point, which was affirmed, was :—

" The sale of the land in 1838, by Sheriff Burns, on writ of venditioni exponas, and his deed to Jacob Shearer for the same, were invalid, and conferred no title upon the purchaser, unless a writ of scire facias was previously to said sale issued against, and served upon the widow, heirs at law and devisees of Samuel Moore, deceased, and that any such writ of scire facias was so issued and served, the defendants have wholly failed to show."

Judge Rowe instructed the jury that under the evidence Mrs. Brinley was not estopped from claiming the land; and as to Wilson, submitted the question of estoppel to the jury.

The jury found for Mrs. Brinley for one undivided half of the land; and as to the other, they found for the defendants.

The defendants took a writ of error, and, amongst others, assigned for error the answer to the plaintiffs' fourth point.

*J. Stewart* (with whom was *F. M. Kimmell*), for plaintiffs in error.—As against devisees, the lien of a judgment obtained against the testator in his life would have been without limit: Brobst *v.* Bright, 8 Watts 125 ; Fetterman *v.* Murphy, 4 Id. 425 ; Konigmaker *v.* Brown, 2 Harris 269 ; Aurand's Appeal, 10 Casey 151.

The Act of February 24th 1834, sect. 34, Pamph. L. 80, 1 Br. Purd. 426, pl. 102, required notice to widow, heirs and devisees to charge the real estate of a decedent with his debt; but here the judgment, execution and condemnation were before that act. There was nothing to be done but issue a writ to sell, the property being already in the custody of the law.   These proceedings having been commenced before Act of 1834 went into effect, bring the case within the exception of the 70th section.   The length of

[Shearer *v.* Brinley.]

time between the condemnation and the venditioni would not affect the validity of the sale : Hinds *v.* Scott, 1 Jones 19.

*J. McD. Sharpe* (with whom were *H. Gehr* and *G. W. Brewer*), for defendants in error.—Under the 34th section of the Act of February 1834, the sheriff had no *power* to sell the land, no scire facias to widow and devisees having been issued: Atherton *v.* Atherton, 2 Barr 112 ; this although the proceedings commenced before the passage of the act: Warden *v.* Eichbaum, 2 Harris 121 ; Sample *v.* Barr, 1 Casey 457. The proviso of the 70th section does not apply to cases like this : Keenan *v.* Gibson, 9 Barr 249. The lien of the debt had expired at the time of the sheriff's sale : Acts of February 24th 1834, sect. 24, Pamph. L. 77 ; 1 Br. Purd. 422, pl. 88 ; April 4th 1797, sect. 4, 3 Smith's. L. 297 ; Benner *v.* Phillips, 9 W. & S. 13 ; Keenan *v.* Gibson, 9 Barr 249.

Mr. Justice SHARSWOOD delivered the opinion of the court, July 2d 1874.

By the 34th section of the Act of February 24th 1834, Pamph. L. 80, it was enacted that " in all actions against the executors or administrators of a decedent, who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debt," the widow and heirs, or devisees, shall be made parties thereto. As well upon the words, as the evident intent of the statute, where at the death of the decedent the land was already charged with the debt, the provision has no application. Such have been the decisions. Thus, a scire facias on a mortgage is not within the act: Hare *v.* Mallock, 1 Miles 263 ; Chambers *v.* Carson, 2 Whart. 9 ; Wallace *v.* Blair, 1 Grant 75 ; nor a scire facias to revive a judgment recovered before the death of the decedent: McMillan *v.* Red, 4 W. & S. 237 ; Riland *v.* Eckert, 11 Harris 215 ; Bennett *v.* Fulmer, 13 Wright 155. It is equally clear that where the land was charged with the debt before the time when the Act of 1834 went into operation, namely, October 1st 1834, it was not necessary to make the widow and heirs, or devisees, parties before proceeding to execution. Were then the premises charged with the debt of Samuel Moore to Thomas H. Crawford before the 1st day of October 1834 ? It is true that the judgment recovered against his executors to April 1827, in the Court of Common Pleas of Franklin county, had not that effect. It was no lien. Under it, however, as the law then stood, the real estate of the decedent might have been seized in execution, condemned and sold. If the case had rested on that judgment alone, no execution could have been issued upon it to reach the land, after the Act of 1834, without a scire facias to bring in the widow and devisees. This is the extent of Keenan *v.* Gibson, 9 Barr 249 ; Warden *v.* Eichbaum, 2 Harris 121 ; Kessler's Appeal, 8

[Shearer v. Brinley.]

Casey 390; McLaughlin v. McCumber, 12 Id. 14. What distinguishes the case before us from all these determinations · is, that before October 1st 1834, there was an execution, a levy on the premises and an inquisition and condemnation returned. This undoubtedly created a lien on the land so levied on; it was in the custody of the law to answer that debt, and consequently was already charged with it: Stauffer v. The Commissioners, 1 Watts 300; Packer's Appeal, 6 Barr 277; Lea v. Hopkins, 7 Id. 492; Hinds v. Scott, 1 Jones 19; Riland v. Eckert, 11 Harris 215. No one can doubt that a venditioni exponas, founded on that levy and condemnation, followed by a sheriff's sale and deed, duly acknowledged, would have divested the title of Samuel Moore in the premises. Without any resort to the 70th section of the Act of 1843, which excepts from the repealing clause all such acts as may be necessary to finish proceedings commenced before that time, the 34th section had no application to this proceeding. It may be worth while, however, to observe that the exception has been held not to apply in favor of an action commenced or judgment obtained against the personal representatives of the decedent before the act, because, having no necessary reference to the real estate, no proceeding with such reference can be said to have commenced until execution and levy. But where there was such an execution and levy, there is such a proceeding commenced, which the act allows to be finished without reference to its provisions. We think therefore there was error committed by the learned court below in affirming the plaintiff's fourth point, that the sale of the land in 1838, on the writ of venditioni exponas, was invalid, unless a writ of scire facias was previously to said sale issued against and served upon the widow, heirs at law and devisees of Samuel Moore, deceased.

It is contended, however, that this error cannot avail the plaintiffs here, because it appears on the face of the record that the lien of the debt of Crawford, as against the heirs and devisees of Moore, had expired at the date of the sheriff's sale in 1838. Samuel Moore died in 1825. The period of limitation of the lien of his debts was then seven years, by the Act of April 4th 1797, sect. 4, 3 Smith 297, "after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his or her heirs, executors or administrators, within the said period of seven years." It has been settled that the effect of an action within seven years, duly prosecuted to judgment, was to extend the lien by analogy to the Act of 4th of April 1798, sect. 2, 3 Smith 331, five years longer—that is, for twelve years from the decease of the debtor: Trevor v. Ellenberger, 2 Penna. Rep. 94; Penn v. Hamilton, 2 Watts 53; Fetterman v. Murphy, 4 Id. 429; Steel v. Henry, 9 Id. 523; McLaughlin v. McCumber, 12 Casey 14. As these decisions have been subsequently ex-

[Shearer *v.* Brinley.]

plained, this court adopted the analogous provisions of the Act of
1798 to determine what was an action duly prosecuted within the
Act of 1797: Steel *v.* Henry, 9 Watts 528; Payne *v.* Craft, 7
W. & S. 465.    More than twelve years from the death of Samuel
Moore had elapsed when the title of his devisees was attempted to
be divested by the sheriff's sale.    Without any question, the general
lien of the debt, as against them, was then gone.    But the point
now to be determined is, whether the levy and condemnation, at a
time when the lien of the debt was in full force, and when such
seizure and levy was perfectly lawful and regular, was a sufficient
due prosecution of the action without a revival of the judgment?
Nothing is better settled than that under the Act of 1798 it was
sufficient, and that no revival of the judgment within five years
was necessary: Young *v.* Taylor, 2 Binn. 218; Commonwealth *v.*
McKisson, 13 S. & R. 144.    The mischief of such a particular
secret lien, when the general lien of the judgment had expired,
occasioned the passage of the Act of March 26th 1827, sect. 2, 9
Smith 303; Ebright *v.* The Bank, 1 Watts 397.    Shall the anal-
ogy of the Act of 1798 be still further carried out by applying to
the Act of 1797 the provision of this supplement of 1827?  This
was one of the questions which arose in Steel *v.* Henry.    Mr.
Justice Kennedy remarked: "The Acts of 1827 and 1828, rela-
tive to the liens of judgments, and prescribing the mode to be
observed and pursued with a view to continue such liens in force,
have no application to judgments obtained against the personal
representatives of deceased debtors, and not being very reasonable
in some of their provisions, as regards the continuance of the liens
under judgments obtained against the debtors themselves, it is
therefore not very probable that courts will ever be disposed to ex-
tend their principles to cases not falling within either the letter or
spirit of these acts."    Steel *v.* Henry went off upon another point.
The question, however, did arise, and was the very *ratio decidendi*
in Payne *v.* Craft, 7 W. & S. 465.    "It has been argued," said
Mr. Justice Kennedy, "that the directions of the Acts of 1798,
1827 and 1828, for continuing the liens of judgments therein men-
tioned, ought to have been observed and strictly complied with by
Mr. Ross, in order to continue the lien of his debt after he had
obtained judgment for it.    In answer to this, however, it is suffi-
cient to observe that these Acts of Assembly do not embrace judg-
ments originally obtained against the executors or administrators
of a deceased debtor, but extend merely to judgments obtained
against the debtor himself in his lifetime, whereby liens are created
on his real estate for the sums so recovered."    He goes on to say:
"The farthest that this court has gone was to adopt, upon a prin-
ciple of analogy, the five years mentioned in these acts, and to
hold that, where no proceeding had been had or act done on a
judgment obtained against the personal representatives of a de-

[Shearer *v.* Brinley.]

ceased debtor, negativing the idea of its being paid, within five years after the seven years from the debtor's death had expired and the judgment had been obtained, the lien of the debt on the real estate, late of the said debtor, should be considered as extinct and gone." It is true that the late Mr. Chief Justice Thompson, for whose *obiter dicta* even, no man can have a greater respect than I have, in McLaughlin *v.* McCumber, expressed the opinion that the Act of 1834 had changed the law as laid down in Steel *v.* Henry and Payne *v.* Craft; and he refers to the twenty-fifth section as forbidding by express provision an implication that the lien might be continued by execution on the first judgment, by the express declaration that the lien shall not be continued against the real estate of the decedent unless revived by scire facias every five years. But the twenty-fifth section is confined to judgments which at the time of the death of the decedent shall be a lien on his real estate; and even as to them the provision to which he refers is: " Such judgments shall not continue a lien on the real estate of such decedent as against a bonâ fide purchaser, mortgagee or other judgment-creditor of such decedent, unless revived by scire facias or otherwise, according to the laws regulating the revival of judgments." It is accordingly well established that the lien of a judgment against a decedent at the time of his death, as against his heirs or devisees, is without limit and needs not to be revived every five years, in order to be executed at any time, on lands still held by them: Fetterman *v.* Murphy, 4 Watts 424; Brobst *v.* Bright, 8 Id. 124; Wells *v.* Baird, 3 Barr 351; Konigmaker *v.* Brown, 2 Harris 269; Aurand's Appeal, 10 Casey 151; Bindley's Appeal, 19 P. F. Smith 295. The decision in McLaughlin *v.* McCumber, that on a judgment against the personal representatives of a decedent, obtained prior to October 1st 1834, a testatum fi. fa. could not be issued and executed on land without calling in the heirs or devisees, was undoubtedly right. In that case there was no lien, particular or general, at the time when the Act of 1834 went into operation. On the whole, then, we have arrived at the conclusion that though the general lien of the debt of Thomas H. Crawford against other lands was gone at the time of the sheriff's sale, yet the particular lien, acquired by the levy and condemnation on these premises, still subsisted, unaffected by the lapse of time; and the sale by the sheriff, under the venditioni exponas issued upon it, divested the title of the devisees of Samuel Moore, and vested a good title in the purchaser.

Judgment reversed.